F I L E D
Clerk
District Court

AUG 05 2026

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| JOSHUA LAWRENCE ROBERT HUGHES,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANCISCO M. RABAULIMAN, in his official capacity as Secretary of the Commonwealth of the Northern Mariana Islands Department of Community and Cultural Affairs; and<br>MARGARITA TORRES-ALDAN, in her official capacity as the Administrator of the Commonwealth of the Northern Mariana Islands Nutrition Assistance Program,<br><br>    Defendants. | Case No. 1:26-cv-00015<br><br><br>**SCREENING ORDER** |

Before the Court is Plaintiff Joshua Lawrence Robert Hughes's Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application," ECF No. 1) and Complaint for Declaratory and Injunctive Relief (ECF No. 2), both filed on July 15, 2026. For the reasons set forth below, the Court grants Hughes's Application and finds that his Complaint passes screening under 28 U.S.C. § 1915(e). As such, as required by 28 U.S.C. § 1915(d) and Rule 4(c)(3) of the Federal Rules of Civil Procedure, the Court authorizes the issuance of summons in this case and service to be made in accordance with Rule 4(i)(1) and (2) of the Northern Mariana Islands Rules of Procedure, as permitted by Rules 4(e) and (j) of the Federal Rules of Civil Procedure, upon Hughes's providing mailing addresses for the Defendants.

1

## I.    APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Hughes's Application is supported by his affidavit and financial information.  Based on his representations of his income and expenses, the Court finds the Application well taken and therefore grants Hughes's Application.

## II.    LEGAL STANDARD

As Hughes is proceeding without prepayment of costs or fees, the Court is "require[d]" to screen his Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), and ascertain whether it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  As to failure to state a claim, a complaint survives dismissal "only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'"  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting 28 U.S.C. § 1915(e)(2)(B)(ii)'s "failure to state a claim" language "parallels the language of Federal Rule of Civil Procedure 12(b)(6)" and applying standard of review for Fed. R. Civ. P. 12(b)(6) dismissals to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)).  A claim is "plausible on its face" where there is sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[D]etailed factual allegations" are not required; however, a plaintiff must plead "more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Id.* (rejecting formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" (internal quotation marks and brackets omitted)).

### III.    BACKGROUND

In his seven-page Complaint, Hughes names Francisco M. Rabauliman, the Secretary of the Commonwealth of the Northern Mariana Islands (CNMI) Department of Community and Cultural Affairs (DCCA), and Margarita Torres-Aldan, the Administrator of the CNMI Nutrition Assistance Program (NAP), as defendants and alleges the following:

(1) Hughes, a forty-year-old resident of Saipan with limited financial resources, receives Supplemental Security Income and has been receiving benefits under the NAP for approximately the past six years.  (Compl. ¶¶ 6, 15, 16, ECF No. 2.)

(2) The NAP is funded through a block grant from the U.S. Department of Agriculture Food and Nutrition Service, with administration of the NAP "governed, in part, by an annual Memorandum of Understanding" between the U.S. Department of Agriculture and the DCCA.  (*Id.* ¶¶ 9-10.)

(3) Paragraph 17 of the MOU for fiscal year 2025 requires the DCCA "to establish a system of Fair Hearings for appeals from any household aggrieved by any action of the CNMI in operating" the NAP.  (*Id.* ¶ 11.)  In accordance with the requirements of the MOU, the CNMI has promulgated administrative regulations governing the conduct of Fair Hearings under the NAP.  (*Id.* ¶ 12 (citing NMIAC § 55-30-270).)

(4) On June 10, 2025, Hughes submitted his annual renewal application for his NAP benefits.  (*Id.* ¶ 17.)

(5) On June 30, 2025, the NAP issued a notice allocating $41.00 per month in benefits to Hughes.  (*Id.* ¶ 20.)  The notice also informed Hughes that he had the right to an "Agency Conference or a Fair Hearing on his case," which conference or hearing could be requested by completing and submitting an attached form within ten days.  (*Id.* ¶ 21.)

(6) Hughes completed and submitted the attached form on July 3, 2025, requesting a "Fair Hearing." (*Id.* ¶ 22; *see also id.* ¶ 23 (alleging that NAP employee "Anica U." received the form the same day).) Hughes sought a "Fair Hearing" on the ground that the NAP incorrectly calculated his monthly benefit amount under the applicable regulations, such that the correct amount "should have been approximately $141 per month." (*Id.* ¶ 24.)

(7) No "Fair Hearing" has been scheduled or held since Hughes submitted his request, nor has the NAP acted on Hughes's assertion about the miscalculation of his benefits, notwithstanding the applicable regulations requiring the NAP Administrator to schedule, conduct, and conclude a "Fair Hearing," and issue a decision, within sixty days of receipt of a request for a "Fair Hearing." (*Id.* ¶¶ 25-31 (citing NMIAC § 55-30-270(e)).)

Hughes brings one cause of action under 42 U.S.C. § 1983 against both Defendants in their official capacities. (*Id.* ¶¶ 1, 7, 8.) Hughes alleges that he has a property interest in the NAP benefits for which he is eligible that is protected under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution such that Defendants failure to provide him with a "Fair Hearing" after he requested the same deprived him of procedural due process in violation of his federal constitutional rights. (*Id.* ¶¶ 32-37.) Hughes seeks, *inter alia*, a declaration that Defendants' conduct violates the Due Process Clause, an injunction commanding Defendants to promptly provide him with a "Fair Hearing" as required under the governing regulations, and fees and costs. (*Id.* at 6-7.)

## IV.    DISCUSSION

**A. Screening**

Hughes's Complaint does not appear to be "frivolous or malicious," 28 U.S.C. § 1915(e)(2)(B)(i), nor does it "seek[] monetary relief against a defendant who is immune from such relief," *id.* § 1915(e)(2)(B)(iii). Therefore, for screening purposes, the Court need only assess

4

whether the Complaint "fails to state a claim on which relief may be granted[.]" *Id.* § 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, Hughes must allege sufficient factual information showing that "he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (internal quotation marks omitted). Here, Hughes alleges that his constitutional right to procedural due process was violated by Defendants' continuing failure to afford him an opportunity to challenge the determination of his NAP benefits, as otherwise required by CNMI law. "A section 1983 claim based on procedural due process . . . has three elements:  (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

As to the first element, the Supreme Court has explained that "[f]ood-stamp benefits . . . 'are a matter of statutory entitlement for persons qualified to receive them.'" *Atkins v. Parker*, 472 U.S. 115, 128 (1985) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970)); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (explaining that legitimate claim of entitlement to benefits depends on creation and scope of entitlement as "defined by existing rules or understandings that stem from an independent source such as state law" (internal quotation marks omitted)). Here, as pleaded in Hughes's Complaint and set forth in relevant provisions of the Northern Mariana Islands Administrative Code, the CNMI issues NAP benefits pursuant to a Memorandum of Understanding between the local and federal governments, with appropriate benefits issued to those individuals or households who meet the eligibility requirements as determined by the DCCA and NAP. Critically, the local governing regulations provide that NAP

benefits are to be issued "to eligible households," NMIAC § 55-30-401, in an amount determined by a set formula, *see id.* § 55-30-245(e), with no provision for CNMI officials to make discretionary grants or denials of NAP benefits.  In other words, once Hughes meets the eligibility criteria for NAP benefits, Hughes is entitled to the amount of NAP benefits as provided by CNMI regulations.  As such, Hughes's allegations are sufficient to show that Plaintiff's entitlement to NAP benefits "are appropriately treated as a form of 'property' protected by the Due Process Clause."  *Atkins*, 472 U.S. at 128; *see also Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015) ("[P]laintiffs have a protected property right in public benefits when . . . a statute authorizes those benefits and the implementing regulations greatly restrict the discretion of the people who administer those benefits."  (internal quotation marks omitted)).

As to the second element, Plaintiff's alleges that the NAP did not correctly calculate the amount of benefits to which he was entitled in applying the formula set forth at NMIAC § 55-30-245(e).  (*See* Compl. ¶¶ 20, 24.)  Defendants' alleged wrongful reduction in Hughes's NAP benefits deprives him of his protected property interest in the NAP benefits to which he is entitled under CNMI regulations.  *Cf. Goldberg*, 397 U.S. at 264 ("For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care.").  Thus, Hughes's Complaint sets forth sufficient material facts to establish this element as well.  *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 973 (9th Cir. 2015) ("Having found that the Plaintiffs have a property interest in their benefits, we must now examine whether providing a lower calculated budget to participants deprives them of this property interest.  We find that it likely does.").

As to the third element, while "the mere violation of a regulation does not necessarily give rise to a violation of the due process clause," *Tietjen v. U.S. Veteran's Admin.*, 692 F. Supp. 1106, 1112 (D. Ariz. 1988) (discussing *United States v. Caceres*, 440 U.S. 741 (1979)), here, Hughes

effectively alleges that he was not afforded any opportunity whatsoever to challenge the reduction in his NAP benefits.  The Supreme Court has explained:

> The fundamental requisite of due process of law is the opportunity to be heard.  The hearing must be at a meaningful time and in a meaningful manner. . . .  [T]hese principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.

*Goldberg*, 397 U.S. at 267-68 (internal quotation marks and citations omitted).  Hughes's allegations showing that Defendants failed to provide *any* hearing or decision on his challenge to the calculation of his NAP benefits is sufficient to establish this element.

Therefore, Hughes's Complaint plausibly states a 42 U.S.C. § 1983 claim based on procedural due process.

**B.  Method of Service**

As Hughes "is authorized to proceed in forma pauperis under 28 U.S.C. § 1915," the Court is required to "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."  Fed. R. Civ. P. 4(c)(3); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in such cases."). Hughes's Complaint names the two Defendants—both natural persons—in their official capacity as CNMI officials.  In recognition that a suit against a state officer in their official capacity is "tantamount to suing the state itself," *Alexander v. Brown*, No. 9:23-cv-00274-JFW-SHK, 2024 WL 1218280, at *10 (C.D. Cal. Feb. 9, 2024) (quoting *Gonzalez v. Cal. Highway Patrol*, No. 1:20-cv-01422-DAD-JLT, 2021 WL 3287717, at *8 (E.D. Cal. Aug. 2, 2021)), *report and recommendation adopted*, 2024 WL 1216716 (C.D. Cal. Mar. 20, 2024), decisions interpreting Rule 4 of the Federal Rules of Civil Procedure, governing permissible methods of service of process, have recognized that the rule is ambiguous as to whether a state official sued in their

official capacity must be served in accordance with Rule 4(e) (service on individual within a judicial district of the United States) or Rule 4(j) (service on foreign, state, or local government), *see Alexander*, 2024 WL 1218280, at *9 (discussing *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982), and noting *Jackson* did not "concretely answer whether state officials sued in their official capacities must be served pursuant to Rule 4(e) or (j)"); *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28-29 (1st Cir. 1988) ("There is no doubt that [former] Rule 4(d)(1) applies when a state officer is sued in his *individual* capacity.  However, [former] Rule 4(d)(1) nor [former] Rule 4(d)(6) addresses the situation when a particular officer of a state is sued in his official capacity.").

The Court, however, need not "address whether a state official sued in their official capacity must be served under Rule 4(e) or 4(j) because both provisions allow for service pursuant to state law." *Alexander*, 2024 WL 1218280, at *10.  Rule 4(e)(1) permits service on an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"  Fed. R. Civ. P. 4(e)(1).  Similarly, "[a] state . . . or any other state-created governmental organization that is subject to suit must be served by . . . serving a copy of [the summons and complaint] in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  *Id.* 4(j)(2)(B).  CNMI law provides that the "the issuance, service and return of process shall be as prescribed in the rules of practice or procedure adopted by the judiciary of the Commonwealth [Superior Court]."  7 CMC § 1205.  Under Rule 4 of the Northern Mariana Islands Rules of Civil Procedure, as duly adopted and promulgated by the CNMI judiciary, specific provision is made for service on a CNMI officer or employee sued in their official capacity:

> **(i) Serving the Commonwealth, and its Agencies, Corporations, Officers, or Employees.**

8

(1) *Commonwealth*.  To serve the Commonwealth, a party must:

(A) deliver a copy of the summons and the complaint to the attorney general or to an assistant attorney general or clerical employee of the office of the attorney general at the office of the attorney general; or

(B) send a copy of the summons and the complaint by registered or certified mail addressed to the attorney general.

(2) *Agency; Officer or Employees Sued in an Official Capacity*. To serve an officer, agency or employee of the Commonwealth, a party must serve the Commonwealth in the manner prescribed by Rule 4(i)(1) and also send a copy of the summons and the complaint by registered or certified mail to the officer or agency.

NMI R. Civ. P. 4(i)(1)-(2).  As such, first, the Court will authorize service of process on the CNMI by having the U.S. Marshals Service deliver process to the CNMI Office of the Attorney General. Second, the Court will authorize service of process on the two named Defendants by certified mail addressed to each Defendant as officers within DCCA, with Hughes's counsel's address listed for receiving return receipts.  As Hughes did not provide a mailing address for any Defendant, the Court will require Hughes to provide the Clerk's Office with mailing addresses for each Defendant forthwith.  In addition, after the Clerk's Office mails out process, Hughes must still file proof of service on each Defendant in accordance with Rule 4(*l*) and (m) of the Federal Rules of Civil Procedure.

## V.    CONCLUSION

For the reasons set forth above, the Court grants Hughes's Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 1) and finds that Hughes's Complaint (ECF No. 2) passes screening under 28 U.S.C. § 1915(e) and therefore further proceedings thereon is appropriate.  Accordingly, pursuant to 28 U.S.C. § 1915(d) and Rule 4(c)(3) of the Federal Rules of Civil Procedure:

(1) Hughes is directed to file forthwith a notice stating the mailing addresses for the two Defendants as officers within the CNMI DCCA.

(2) **Failure to file the notice within seven days of issuance of this order may result in dismissal of the Complaint.**

(3) Upon filing of the notice containing the mailing addresses for Defendants, the Clerk is directed to issue three copies of summons, one addressed to the CNMI Attorney General and one for each Defendant.

(4) Upon issuance of summons, the U.S. Marshals Service is directed to serve the summons addressed to the CNMI Attorney General along with a copy of the Complaint (ECF No. 2) by leaving the summons and Complaint with the CNMI Attorney General, a CNMI Assistant Attorney General, or clerical employee at the CNMI Office of the Attorney General at the CNMI Office of the Attorney General, located at the Juan A. Sablan Memorial Building on Pagan Loop in Capitol Hill, Saipan, CNMI.  The U.S. Marshals Service shall file proof of service or attempted service.

(5) The Clerk is directed to mail the summons addressed to each Defendant with a copy of the Complaint (ECF No. 2) by certified mail, return receipt requested, with Hughes's counsel's address listed as the receiving address for any return receipt.

(6) Hughes must file proof of service on Defendants in accordance with Rule 4($l$) and (m) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 5th day of August, 2026.

_____
RAMONA V. MANGLONA
Chief Judge

10